**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION**

UNITED STATES OF AMERICA,

        Plaintiff,

    vs.                        Civil Action 2:07-mc-39
                                        Judge Smith
                                        Magistrate Judge King

RICHARD D. SCHULTZ,

        Defendant.

<u>OPINION AND ORDER</u>

The United States (or "Government") seeks to enforce a civil judgment entered by the United States District Court for the Northern District of California that was allegedly assigned to the United States. Specifically, the Government asks that defendant Richard Schultz appear for a judgment debtor exam. *Motion for Judgment Debtor Examination*, Doc. No. 20. For the reasons that follow, that motion is **DENIED**.

I.    **BACKGROUND**

A convoluted background pre-dates the matter now pending in this Court. Schultz was a plaintiff in an action filed in the Northern District of California arising from the decline of stock associated with his investments in a thoroughbred horse breeding farm. *See McGonigle v. Combs*, 968 F.2d 810 (9th Cir. 1992). The claims were resolved in favor of defendants and three sets of defendants – Frank Bryant ("Bryant"); Bateman Eichler, Hill Richards, and Robert McGuinness; and Charles Hembree and his law firm, Kincaid, Wilson

1

Schaeffer and Hembree ("Hembree") – were awarded attorneys fees as against Schultz and another plaintiff, Blas R. Casares. *See Schultz v. Hembree*, 975 F.2d 572 (9th Cir. 1992). On October 26, 1994, the United States District Court for the Northern District of California awarded $1,686,531.00 to Charles Hembree and his law firm from Schultz and Casares jointly and severally. Doc. No. 1-4, PAGEID#:7. That court awarded $238,158.00 Hembree from Schultz individually. *Id*. The district court further awarded $779,369.09 to Kemper Securities ("Kemper"), the successor to Bateman Eichler, from Schultz and Casares jointly and severally. *Id*. at PAGEID#:8. The court also awarded Kemper $174,156.65 from Schultz individually. *Id*. The court entered judgment on these amounts, plus interest, on October 26, 1994. *Id*. at PAGEID#:5 – PAGEID#:9.

On December 19, 1994, the United States District Court for the Northern District of California also awarded Frank Bryant more than $900,000 from Schultz and Casares jointly and severally, and $281,387.14 from Schultz individually. Doc. No. 1-3, PAGEID#:25 – PAGEID#:29. Judgment on these amounts, plus interest, was entered on December 19, 1994. *Id*.[1]

Following the entry of the 1994 judgments, Schultz attempted to avoid liability on those judgments:

> [A] California federal court entered judgments in favor of three of Schultz's creditors, totaling $5 million. In response to the judgments, Schultz conspired with numerous individuals to avoid payment to the creditors. The conspiracy sought to defraud Schultz's creditors by using third parties or "nominees" to purchase judgments against

---

[1] For ease of reference, the Court will refer to the judgments dated October 26, 1994 and December 19, 1994, collectively, as the "1994 judgments."

> Schultz at a discount. To purchase the judgments, the individuals involved in the conspiracy used various incorporated entities, including Judgment Acquisition Corporation ("JAC"), Judgment Procurement Corporation ("JPC"), Judgment Resolution Corporation ("JRC"), and Cedarwood Acquisition Corporation ("Cedarwood"), as nominees. . . . The third-party entities purchased the judgments with Schultz's funds that previously were concealed in offshore accounts. Although Schultz was the true purchaser of the judgments, the nominees did not disclose to the creditors the nature of Schultz's interest.

*United States v. Bogart*, 576 F.3d 565, 567 (6th Cir. 2007). *United States v. Elson*, 577 F.3d 713, 718 (6th Cir. 2009) (same).

The parties agree that JAC, JPC and JRC assigned the 1994 judgments to one Gloria McPeak. According to Schultz, Ms. McPeak loaned $900,000.00 to JRC in October 1997, in exchange for which JRC, JAC and JPC assigned as collateral to Ms. McPeak all of their rights in the 1994 judgments entered against Schultz and Casares. *Affidavit of Richard D. Schultz*, ¶¶ 1, 2 ("*Schultz Affidavit*"), attached as *Exhibit 3* to *Memo. in Opp.*; Doc. No. 1-3, PAGEID#:32 – PAGEID#:34 (JRC, in consideration of $10.00, assigning "all Assignor's rights, title and interest in the JUDGMENT RE ATTORNEY'S FEES AND LEGAL EXPENSES, filed December 19, 1994, against Richard D. Schultz and Blas R. Casares" to Gloria McPeak); Doc. No. 1-4, PAGEID#:12 – PAGEID#:16 (same except with JAC and JPC as assignors). Schultz further asserts that, in January 1998, "Gloria McPeak was repaid the $900,000 she had loaned." *Schultz Affidavit*, ¶ 3. "[A]t that time she reassigned the collateral [*i.e.,* the 1994 judgments] back[.]" *Id.*[2]

On February 18, 1998, a "Notice of Substitution of Party Defendants/Judgment Creditors and Counsel for Same" was filed in the

---

[2] The Government's challenge to these events is discussed *infra*.

Northern District of California. *Exhibit 4*, Doc. No. 25-4, attached to *Memo. in Opp*. The notice advised that the 1994 "judgments rendered against the plaintiffs/judgment debtors herein, Richard D. Schultz and Blas R. Casares, [have] been assigned to the following substituted new-party defendants/judgment creditors, respectively": JAC, JPC and JRC.[3] *Id*. at PAGEID#:462 - PAGEID#:463.

The 1994 judgments were the subject of appeals. *Layman v. Bryant*, Nos. 94-16391, 94-17067, 94-17070, 95-15343, 95-15344, 97-15340, 1997 U.S. App. LEXIS 11446 (9th Cir. May 7, 1997). The United States Court of Appeals for the Ninth Circuit reversed in part and affirmed in part the 1994 judgments:

> We REVERSE the district court's denial of attorneys' fees to Bryant under § 11(e), and REMAND for the district court to issue an appropriate award of attorneys' fees. We AFFIRM the district court's award of attorneys' fees to Bryant, Hembree and Kemper against Casares and Schultz, except we REMAND for the district court to determine whether the statute of limitation defense would have applied to Schultz's stand-alone claim, and if not, to recalculate the attorneys' fee award against Schultz accordingly.

*Id*. at *13-14.

Following proceedings on remand, a "*Final Consolidated Judgment*" was entered against only Schultz on December 20, 1999:

> This Court has retained jurisdiction to adjudicate Plaintiff's [Schultz's] application for a reduction in the awards of Defendants' attorneys' fees, expenses and other costs of suit, pursuant to a decision of the Ninth Circuit Court of Appeals dated May 14, 1997. The Court has been advised that Defendant Judgment Resolution Corporation ("JRC") is the successor in interest to and/or assignee of Charles R. Hembree and Kincaid, Wilson, Schaeffer & Hembree, P.S.C. (collectively "Hembree"); Kemper

---

[3] Thereafter, in November 1998, JAC and JPC merged with JRC. Doc. No. 12-9 (articles of merger).

Securities, formerly Bateman Eichler, Hill Richards ("Kemper"); and Roger Sullivan, executor of the Estate of Frank Bryant, deceased, ("Bryant").  This Court entered judgments against Schultz (1) in favor of Hembree in the amount of $1,924,689.00 on October 26, 1994; (2) in favor of Kemper in the amount of $953,525,74 on October 26, 1994; and (3) in favor of Bryant in the amount of $1,083,020.47 on December 19, 1994.  The total principal amount of these judgments for fees and expenses incurred prior to July 31, 1993 is $3,961,235.21.  This Court subsequently awarded a total of $202,324,000 for fees and expenses incurred after July 31, 1993.

The Plaintiff's application for reduction of the attorneys' fees judgments came on for hearing on November 21, 1997, before the Court, the Honorable Charles A. Legge, U.S. District Court Judge, presiding.  The issues now having been fully litigated and resolved, and the Court having granted Plaintiff's application, reducing the $3,961,235.21 awards by $45,000.00 for reasons set forth on the record in open court on November 21, 1997:

**IT IS HEREBY ORDERED AND ADJUDGED** (a) that the attorneys' fees awards for fees and expenses prior to July 31, 1993 be reduced by $45,000.00; (b) that Defendant Judgment Resolution Corp.,[4] as successor to Hembree, Kemper and Bryant, recover attorneys' fees in the principal amount of $4,118,559.21 from Richard Schultz; and (c) that interest accrue on $3,916,235.21 at the rate of 7.58% from March 29, 1990 and on $202,324.00 at the rate of 7.58% from December 1, 1994.

Doc. No. 1-1, PAGEID#:40 - PAGEID#:41 (emphasis in original).

Accordingly, the *Final Consolidated Judgment* reduced by $45,000.00 the

award in the 1994 judgments for attorney's fees and expenses prior to

July 31, 1993.  *Id*. at PAGEID#:41.  However, the *Final Consolidated*

*Judgment* awarded over $4 million dollars in favor of JRC as assignee

or successor in interest to Hembree, Kemper and Bryant.  *Id*. at

PAGEID#:40 - PAGEID#:41.

On October 13, 2004, – *i.e.*, after the entry of the *Final*

*Consolidated Judgment* in 1999 – Gloria McPeak, acting *pro se*, filed

---

[4] On September 21, 2001, JRC filed for dissolution.  Doc. No. 5-4.

notices of assignment of the judgments from JRC, JPC and JAC to her. Doc. No. 12-11. Upon the filing of these notices, Ms. McPeak also filed two applications, each seeking renewal of "the judgment" for a 10-year period. Doc. No. 1-3, PAGEID#:23 - PAGEID#:29 (application attaching judgment dated December 19, 1994); Doc. No. 1-4, PAGEID#:3 - PAGEID#:9 (application attaching judgment dated October 26, 1994). The Northern District of California granted these applications for renewal. Doc. No. 12-12, PAGEID#:350 - PAGEID#:351 (order dated October 19, 2004).

On December 6, 2004, Ms. McPeak filed an *Acknowledgment of Assignment of Judgment* to the United States, which was dated November 26, 2004. Doc. No. 1-1, PAGEID#:35 - PAGEID#:41. This filing, which identifies the *Final Consolidated Judgment* as inclusive of the underlying 1994 judgments entered against Schultz, was signed by Ms. McPeak "[f]or" JRC:

> Gloria McPeak ("Assignor"), of 2834 Sandpiper Place, Clearwater, Florita 33762, and the Judgment Creditor as the previous assignee of the Final Consolidated Judgment in this matter, for valuable consideration, does hereby transfer, assign and convey to the United States Government ("Assignee"), all of Assignor's rights, title and interest in the collection of the Final Consolidated Judgment, filed in the United States District Court for the Northern District of California on December 20, 1999, and any amendments or supplements thereto. The Final Consolidated Judgment, attached hereto as Exhibit A, is comprised of the following underlying judgments previously awarded and entered by this Court [United States District Court for the Northern District of California]:
>
> a. The Judgment re Attorneys' Fees and Legal Expenses, filed October 26, 1994, and entered November 24, 1994, against Richard D. Schultz and Blas R. Casares ("Hembree Judgment") in the United States District Court for the Northern District of California, and all amendments and supplements thereto;

6

b.    The Judgment re Attorneys' Fees and Legal Expenses, filed October 26, 1994, and entered November 24, 1994, against Richard D. Schultz and Blas R. Casares ("Everen Judgment"), in the United States District Court for the Northern District of California, and all amendments and supplements thereto; and

c.    The Judgment re Attorneys' Fees and Legal Expenses, filed December 19, 1994, against Richard D. Schultz and Blas R. Casares ("Bryant Estate Judgment") in the United States District Court for the Northern District of California, and all amendments and supplements thereto.

This Assignment shall be effective immediately upon delivery to the Assignee and is intended to assign, transfer and convey all past, present and future rights of recovery of Assignor as set forth above, just as if Assignee had been the original party bringing the actions and obtaining and enforcing the Judgments referenced above.

The Judgment Debtor is Richard D. Schultz of 6885 Temperance Point Pl., Westerville, Ohio 43082-8704.

The Assignee is the United States of America, represented by the United States Attorney for the Southern District of Ohio, 303 Marconi Blvd., Columbus, Ohio 43215, and the Asset Forfeiture and Money Laundering Section of the Criminal Division, U.S. Department of Justice, 1400 New York Ave., N.W., Washington, D.C. 20530.

In witness whereof, the Assignor makes this Assignment on the 26 day of November 2004.

Dated: Nov. 26, 2004  [Gloria McPeak signature]
                      GLORIA MCPEAK
                      For Judgment Resolution Corporation

Doc. No. 1-1, PAGEID#:35 - PAGEID#:36.  *See also id.* at PAGEID#:37 –

PAGEID#:41.  The assignment to the United States was the result of an

agreement involving Francis McPeak[5] and the United States in connection

with Mr. McPeak's negotiated guilty pleas in *United States of America*

---

[5] Mr. McPeak is Gloria McPeak's husband.  *Opinion and Order*, Doc. No. 14, p. 3.

*v. Ronald G. Bogart, et al.*, Case No. 2:01-CR-164(5) (S.D. Ohio), Doc. No. 305, pp. 6-7, 7 n.6.[6]

The United States previously sought to depose Schultz through the instant litigation. *Opinion and Order*, Doc. No. 14, pp. 2-3. In response, Schultz moved for a protective order, raising three arguments: (1) the United States does not own the *Final Consolidated Judgment*; (2) the *Final Consolidated Judgment* has expired; and (3) the United States cannot claim rights under Ms. McPeak's assignment because it has taken the position in other judicial actions that Schultz is the beneficial owner of the judgments. Doc. No. 5. In denying Schultz's motion for a protective order on November 9, 2010, this Court specifically "agrees with the United States[, which argued in Doc. No. 12, pp. 1, 11-12], that any definitive construction of the relationship between the *Final Consolidated Judgment* and the 1994 judgments should be left to the court that issued those judgments, *i.e.*, the Northern District of California." *Id.* at 3-4.[7] However, this Court went on to note that "because the *Motion for Protective Order* calls into question the validity of the assignment and of the

---

[6] On June 13, 2003, Francis McPeak pled guilty in this Court to two counts of conspiracy in connection with his role in assisting Schultz in concealing his assets and defrauding creditors. *United States of America v. Bogart, et al.*, Case No. 1:01-CR-164(5) (S.D. Ohio), Doc. No. 105 (court minutes); Doc. No. 215 (judgment). The Court ordered Mr. McPeak to pay $3,342,640 in restitution. *Id.* at Doc. No. 215, p. 3. However, this restitution obligation was later deemed satisfied because the civil judgments had been assigned to the United States. *Id.* at Doc. No. 305, pp. 6-7 ("In satisfaction of his [Mr. McPeak's] restitution obligation, during the hearing on April 21, 2006, this Court approved his agreement with the Government to turn over certain property estimated to be worth between $6M and $10M."), 7 n.6 ("Certain judgments against Mr. Schultz which the Government estimates to be worth between $6M and $10M. As McPeak has turned over these judgments, his obligation is satisfied and the findings in this order do not pertain to him[.]").

[7] Counsel for the United States suggested at the March 27, 2014 oral argument that the Court had misunderstood the Government's position in this regard.

ability of the government to enforce that judgment, this Court will consider – only for purposes of resolving the *Motion for Protective Order* – whether the United States has a colorable interest in that judgment." *Id.* at 4. The Court ultimately concluded that the United States could depose Schultz "in connection with its efforts to collect on judgments assigned to the United States by Gloria McPeak." *Id.* at 8. Apparently, however, a judgment debtor examination did not proceed at that time.

On April 23, 2012 – nearly a year and a half later – the United States again sought a judgment debtor examination of Schultz, requiring Schultz to appear and answer questions regarding his assets, income, expenditures, credits and personal and real property. Doc. No. 15. On May 14, 2012, after no response was filed by Schultz, this Court ordered Schultz to appear on June 19, 2012, to respond to these questions and to bring certain specified information. *Order*, Doc. No. 16.

Shortly before the scheduled examination, the United States moved to quash the order for the judgment debtor examination because of "a conflict with the Plaintiff's calendar." Doc. No. 17, p. 1. The United States represented that "[o]nce the conflict is resolved, Plaintiff will petition the Court for a new Order." *Id.* The Court quashed the order scheduling the judgment debtor examination. *Order*, Doc. No. 18.

In September 2012, Schultz filed an action in the Northern District of California, seeking construction of the *Final Consolidated Judgment* and a declaration of the Government's rights, if any, in that

judgment.  *See Schultz v. United States*, Case No. 12-04955, *Complaint*, Doc. No. 1, ¶ 27.  Notwithstanding its prior position in this Court, the United States moved to dismiss the action pursuant to Fed. R. Civ. P. 12(b)(1) and (b)(6), arguing, *inter alia*, that the doctrine of sovereign immunity barred Schultz's claims.  *Schultz v. United States*, Case No. 12-04955, *Defendant's Notice of Motion and Motion to Dismiss Plaintiff's Complaint*, Doc. No. 4, pp. 8-9, attached as *Exhibit 1* to *Memo. in Opp.*  That motion was granted and Schultz's declaratory judgment action was dismissed.  *Schultz v. United States*, Case No. 12-04955, *Order Re:  Motion to Dismiss (DKT. NO. 4)*, Doc. No. 16, pp. 1-2, attached as *Exhibit 2* to *Memo. in Opp.*

The United States now moves yet again for a judgment debtor examination, representing that a judgment has been entered in its favor and that it has been unsuccessful in its attempts to have Schultz satisfy the judgment or voluntarily supply current financial information that would facilitate payment of this debt.  *Motion for Judgment Debtor Examination*, p. 1.  The United States seeks an order requiring Schultz to appear and "to answer questions concerning his assets, income, expenditures, credits, personal and real property" and to bring certain specified information.  *Id.* at 2 (citing *Exhibit A*, attached thereto).

Schultz opposes the *Motion for Judgment Debtor Examination*. *Defendant's Memorandum in Opposition to Motion for Judgment Debtor Examination*, Doc. No. 25 ("*Memo. in Opp.*").  After *Plaintiff United States of America's Reply to Motion for Judgment Debtor Examination*, Doc. No. 29 ("*Reply*"), was filed, the Court permitted additional

briefing on this matter.  *See Order*, Doc. No. 31; *Defendant's Surreply*, Doc. No. 32 ("*Surreply*"); *Plaintiff United States of America's Reply to Defendant's Surreply*, Doc. No. 33 ("*Response to Surreply*").

On March 27, 2014, the Court conducted oral argument on the *Motion for Judgment Debtor Examination*.  *See Order*, Doc. No. 34; *Minute Entry*, Doc. No. 35.  During oral argument, the parties agreed that this Court has the authority, and indeed the duty, to resolve the issues presented in the *Motion for Judgment Debtor Examination*, including, *inter alia*, the relationship between the 1994 judgments and the *Final Consolidated Judgment*.  Accordingly, this matter is now ripe for resolution.

## II.  STANDARD

Unless a court directs otherwise, a writ of execution may be used to enforce a money judgment.  Fed. R. Civ. P. 69(a)(1).  "The procedure on execution - and in proceedings supplementary to and in aid of judgment or execution - must accord with the procedure of the state where the court is located, but a federal statute governs to the extent it applies."  *Id*.  The "state where the court is located" is "[o]rdinarily . . . the state in which enforcement of the judgment will be sought, since process for the enforcement of the judgment is subject to the territorial limitations of Rule 4.1[.]"  12 Charles Alan Wright & Arthur R. Miller, <u>Federal Practice and Procedure</u> § 3012 (2d ed.).  Accordingly, the "state where the court is located" "need not be the state in which the judgment was originally entered, as federal judgments may by statute be registered in other districts."

11

*Id.* (internal references omitted).  A judgment entered in favor of the United States "may be registered by filing a certified copy of the judgment in any other district[.]"  28 U.S.C. § 1963.  A registered judgment "shall have the same effect as a judgment of the district court of the district where registered and may be enforced in like manner."  *Id.  See also Condaire, Inc. v. Allied Piping*, 286 F.3d 353, 357 (6th Cir. 2002) ("[J]udgments registered pursuant to 28 U.S.C. § 1963 must be enforced in accordance with the laws of the registering state.").

"[T]he United States may have discovery regarding the financial condition of the debtor in the manner in which discovery is authorized by the Federal Rules of Civil Procedure in an action on a claim for a debt."  28 U.S.C. § 3015(a).  Moreover, a judgment creditor may pursue discovery in enforcement proceedings "as provided in these rules or by the procedure of the state where the court is located.")  Fed. R. Civ. P. 69(a)(2). Rule 69 of the Ohio Rules of Civil Procedure "is essentially the same as Federal Rule 69 with changes to make the rule conform to existing Ohio practice and procedure."  Ohio R. Civ. P. 69 Staff Notes.  *See also* Ohio R. Civ. P. 69 ("In aid of the judgment or execution, the judgment creditor . . . may also obtain discovery from any person, including the judgment debtor, in the manner provided in these rules.").

The scope of discovery in aid of the judgment or execution is very broad.  *See*, *e.g.*, *United States v. Conces*, 507 F.3d 1028, 1040 (6th Cir. 2007); *Gordon Constr., Inc. v. Peterbilt of Cincinnati, Inc.*, 10th Dist. No. CA2004-03-018, 2004-Ohio-6662, at *P8 (Ohio Ct.

App. Dec. 13, 2004).  Information regarding a debtor's assets is particularly relevant to post-judgment discovery.  *FTC v. Trudeau*, No. 5:12MC35, 2012 U.S. Dist. LEXIS 160545, at *14 (N.D. Ohio Nov. 8, 2012) (quoting *Andrews v. Raphaelson*, No. 5:09-CV-077-JBC, 2009 U.S. Dist. LEXIS 36658, 2009 WL 1211136, at *3 (E.D. Ky. Apr. 30, 2009)).

## III.  ANALYSIS

Schultz argues that this Court lacks jurisdiction to grant the *Motion for Judgment Debtor Examination* because the United States does not own the *Final Consolidated Judgment*.  *Memo. in Opp.*, pp. 12-13. Schultz contends that, although the Government has invoked jurisdiction under the Fair Debt Collection Procedures Act of 1990, 28 U.S.C. §§ 3001-3038 ("FDCPA"), it cannot seek to recover on a "debt" because the Government does not own the *Final Consolidated Judgment*. *Id*. at 12.  In support of this contention, Schultz notes that the *Final Consolidated Judgment* was entered in favor of JRC, not in favor of the Government's assignor, Gloria McPeak.  *Id*.  According to Schultz, "[t]here is undeniable proof that McPeak had divested herself of any interest in the three 1994 judgments before the Final Consolidated Judgment was entered [in 1999]."  *Id*.  Schultz argues that:  (1) there is no evidence that Gloria McPeak received any interest in the *Final Consolidated Judgment* after it was entered; (2) there is no evidence that she held any ownership interest in JRC in December 1999; and (3) there is no evidence that she possessed authority to assign the judgment on JRC's behalf.  *Id*.  It follows, Schultz argues, that Gloria McPeak could not have effectively assigned JRC's *Final Consolidated Judgment*.  *Id*. at 12-13.  Even the Government

13

has acknowledged that Schultz is the beneficial owner of the *Final Consolidated Judgment*. *Id.* at 13. Schultz therefore takes the position that the United States does not own the debt that it now seeks to collect and that this Court lacks jurisdiction to entertain the Government's request. *Id*.

In its memoranda addressing the *Motion for Judgment Debtor Examination*, the United States argues primarily that the doctrine of *res judicata* forecloses Schultz's arguments, because this Court rejected those arguments when it denied his earlier motion for a protective order. *Reply*, pp. 1-2 (citing Doc. No. 51); *Response to Surreply*, p. 2. In that decision, this Court concluded, *inter alia*, that the United States holds a colorable claim in the debt that it now seeks to collect. *Opinion and Order*, Doc. No. 14, p. 8. The Court also concluded that Ms. McPeak held all rights and interest in the 1994 judgments and the *Final Consolidated Judgment* because the assignment of the 1994 judgments, and all amendments and supplements thereto, to Ms. McPeak was sufficient to confer in Ms. McPeak an interest in the *Final Consolidated Judgment*. *Id*. at 6. The Court further found that the *Final Consolidated Judgment* did not extinguish the 1994 judgments and concluded that the United States is the owner of the judgments. *Id*. at 7-8. In light of those findings and conclusions, the United States contends, the doctrine of *res judicata* now forecloses Schultz's arguments. *Reply*, p. 2; *Response to Surreply*, pp. 1-2. Schultz disagrees, contending that the Court's conclusions on these issues were expressly limited to its resolution of the earlier motion for protective order. *Surreply*, p. 5 (citing

14

*Opinion and Order*, Doc. No. 14, p. 4).  Moreover, the Government's decision to abandon its efforts to conduct a judgment debtor exam mooted this issue.  *Id.*

This Court agrees with Schultz that the doctrine of *res judicata* does not foreclose his present arguments.  In ruling on the earlier motion for protective order, the Court expressly limited its findings and conclusions to the resolution of that motion.  *Opinion and Order*, Doc. No. 14, p. 4.  As noted *supra*, counsel for the Government agreed during the March 27, 2014 oral argument that this Court should fully consider whether the Government holds a collectible debt.  In any event, this Court has authority to revisit its earlier decisions.  *See* Fed. R. Civ. P. 54(b) (Any order that "adjudicates fewer than all the claims or the rights and liabilities of fewer than all the parties does not end the action as to any of the claims or parties and may be revised at any time" prior to entry of a judgment resolving all of the parties' rights and liabilities and all of the claims); *Mallory v. Eyrich*, 922 F.2d 1273, 1282 (6th Cir. 1991) ("District courts have inherent power to reconsider interlocutory orders and reopen any part of a case before entry of a final judgment.  A district court may modify, or even rescind, such interlocutory orders.") (internal citations omitted).  *See also Christianson v. Colt Indus. Operating Corp.*, 486 U.S. 800, 817 (1988) ("A court has the power to revisit prior decisions of its own or of a coordinate court in any circumstance, although as a rule courts should be loathe to do so in the absence of extraordinary circumstances such as where the initial decision was 'clearly erroneous and would work a manifest

15

injustice.'") (quoting *Arizona v. California*, 460 U.S. 605, 618 n.8 (1983)).  Considering the fact that the Court limited its earlier ruling to its consideration of the previous motion for protective order and considering, further, the fact that the Court anticipated a definitive construction by the United States District Court for the Northern District of California of that court's own judgments, *see Opinion and Order*, Doc. No. 14, pp. 4, 8, the Court now undertakes to definitively construe the relationship between the 1994 judgments and the *Final Consolidated Judgment* and determine whether the Government holds a collectible debt against Schultz.

First, Schultz asserts that Ms. McPeak reassigned her interest in the 1994 judgments to her original assignors in January 1998, *Schultz Affidavit*, ¶¶ 3-4, and argues that she could not, therefore, later effectively assign any interest in the judgments to the United States. The United States discounts the "self-serving" *Schultz Affidavit*, noting that it was presented to the Court for the first time only six years after the Government first registered its judgment against Schultz.  *Reply*, p. 1.  The United States further contends that the *Schultz Affidavit* is "[t]he only piece of evidence that supports this alleged reassignment[,]" complaining that Schultz failed to produce, *inter alia*, a copy of the alleged January 28, 1998 reassignment of the 1994 judgments by Ms. McPeak or any documents supporting the assertion that Ms. McPeak's $900,000 payment reflected a loan from her rather than her purchase of 100 shares of stock in JRC.  *Id*. at 1-2 (citing Doc. No. 5-5, PAGEID#: 145 (Organizational Written Action of the Incorporator of JRC dated October 3, 1997).  To the contrary, however,

16

other evidence in the record may serve to corroborate the *Schultz Affidavit*. For example, shortly after the reassignment described in the *Schultz Affidavit*, a notice was filed in the Northern District of California advising that "each of the three (3) [1994] judgments rendered against the plaintiffs/judgment debtors herein, Richard D. Schultz and Blas R. Casares, has been assigned to" JAC, JPC and JRC. *Exhibit 4*, Doc. No. 25-4, at PAGEID#:462 - PAGEID#:463, attached to *Memo. in Opp.* Moreover, the 1999 *Final Consolidated Judgment* grants judgment to JRC.[8] *See* Doc. No. 1-1, PAGEID#:40 - PAGEID#:41. In addition, Ms. McPeak's assignment to the United States was purportedly made on behalf of JRC, *see* Doc. No. 1-1, PAGEID#:36 ("Gloria McPeak For Judgment Resolution Corporation"), and there is no evidence that Ms. McPeak was authorized to act on behalf of JRC. Accordingly, and contrary to the Government's assertions in this regard, there is some evidence in the record that Ms. McPeak had already divested herself of any interest that she held in the 1994 judgments prior to her assignment of those judgments to the United States.

However, the Court need not resolve this issue at this time because the Court also concludes that the *Final Consolidated Judgment* has expired. Under California law, unless renewed, a judgment expires ten (10) years after the entry of that judgment. Cal. Civ. Proc. Code §§ 683.020, 683.120. On October 13, 2004, Ms. McPeak submitted applications to renew the 1994 judgments, not the 1999 *Final Consolidated Judgment. See* Doc. No. 1-3, PAGEID#:23 - PAGEID#:29 (application attaching judgment dated December 19, 1994); Doc. No. 1-

---

[8] As noted *supra*, JAC and JPC merged with JRC in 1998. Doc. No. 12-9.

4, PAGEID#:3 - PAGEID#:9 (application attaching judgment dated October
26, 1994).  This Court rejects the Government's insistence that the
*Final Consolidated Judgment* served merely to supplement the 1994
judgments.  The record is uncontroverted that the *Final Consolidated
Judgment* is in an amount different than the 1994 judgments.  *Compare*
Doc. No. 1-4, PAGEID#:5 – PAGEID#:9 (awarding $1,686,531.00 to Hembree
from Schultz and Casares jointly and severally, and $238,158.00 from
Schultz individually; $779,369.09 to Kemper from Schultz and Casares
jointly and severally, and $174,156.65 from Schultz individually, on
October 26, 1994) *and* Doc. No. 1-3, PAGEID#:25 – PAGEID#:29 (awarding
Bryant $905,770.33 from Schultz and Casares jointly and severally, and
$281,387.14 from Schultz individually, plus interest, on December 19,
1994) *with* Doc. No. 1-1, PAGEID#:40 - PAGEID#:41 (reducing awards for
attorneys' fees and expenses prior to July 31, 1993 by $45,000.00, and
awarding JRC attorneys' fees in the principal amount of $4,118,559.21
from Schultz, plus interest, on December 20, 1999).[9]

　　Significantly, the Ninth Circuit specifically reversed in part
and affirmed in part the 1994 judgments.  *See Layman v. Bryant*, Nos.
94-16391, 94-17067, 94-17070, 95-15343, 95-15344, 97-15340, 1997 U.S.
App. LEXIS 11446, at *13-14 (9th Cir. May 7, 1997).  Moreover, the
Northern District of California entered the *Final Consolidated
Judgment* in favor of JRC, a judgment creditor different than those
identified in the 1994 judgments:  Hembree, Kemper and Bryant.  *See
supra*.  Finally, the *Final Consolidated Judgment* identified only

---

[9] Schultz states, and the Government does not dispute, that the 1994 judgments
differed in amounts from those specified in the *Final Consolidated Judgment*.
However, nowhere does either party specify the total amount awarded by the
1994 judgments or the *Final Consolidated Judgment*.

Schultz as the judgment debtor while the 1994 judgments also awarded judgments against Schultz and Casares jointly and severally.  Doc. No. 1-3, PAGEID#:27 - PAGEID#:28; Doc. No. 1-4, PAGEID#:40 - PAGEID#:41. This Court therefore concludes that the *Final Consolidated Judgment* - in an amount different than the 1994 judgments, in favor of a new judgment creditor (JRC), against a different judgment debtor (only Schultz, individually) - resulted in an entirely new judgment against Schultz.  Ms. McPeak's October 2004 applications to renew the 1994 judgments - notwithstanding the court's approval of those applications - did not effectively renew the *Final Consolidated Judgment.*  The *Final Consolidated Judgment* therefore expired ten years after its entry, *i.e.*, December 20, 2009.  Cal. Civ. Proc. Code §§ 683.020, 683.120.

The Government also argues that Schultz should have challenged Ms. McPeak's 2004 applications to renew the 1994 judgments at the time those applications were filed in the Northern District of California and that, because he did not, he should not be permitted to challenge in this Court her purported assignment of the judgments to the United States. *Reply*, p. 3 (citing *Goldman v. Simpson*, 160 Cal.App.4th 255, 260 (Cal. 2008) for the proposition that a judgment debtor has 30 days in which to file a motion to modify or vacate renewal of a judgment); *Response to Surreply*, p. 2.  However, the record does not affirmatively establish that Ms. McPeak's *pro se* applications to renew the 1994 judgments complied with applicable law. Under California law, a judgment creditor must serve the notice of renewal of the judgment on the judgment debtor and advise the debtor of the right to file a

19

motion to vacate or modify renewal of the judgment within 30 days.
Cal. Code Civ. Proc. § 683.160(a).  *See also* Cal. Code Civ. Proc. §
683.170(b) (providing 30 days to a judgment debtor in which to file a
motion to vacate renewal of a judgment).  Proof of that service must
also be filed with the court.  Cal. Code Civ. Proc. § 683.160(a).
"Until proof of service is filed . . . [no] enforcement proceedings
[may] be commenced to enforce the judgment except to the extent that
the judgment would be enforceable had it not been renewed."  *Id*. at §
683.160(b).  Here, the applications for renewal of judgment contain no
certificates of service demonstrating that Schultz was provided the
required notice.  *See* Doc. Nos. 1-3 and 1-4.  In addition, the court's
order granting the "application" for renewal of the "judgment"
indicates that a copy of the order was furnished to only Ms. McPeak.
Doc. No. 12-12, PAGEID#:351.  There is simply no evidence that Schultz
was afforded notice of renewal of the 1994 judgments; the Court will
not, under these circumstances, insist that he should have challenged
the renewal of those judgment at that time.

In short, the record establishes that the Government now seeks to
enforce a judgment that was never properly renewed prior to its
expiration.[10]  The Government's request for an order requiring Schultz
to appear to answer questions concerning his assets, income, etc., is
therefore without merit.

_____

[10] Having so concluded, the Court need not and does not address Schultz's
argument that the Government should be estopped from its collection efforts
because it took the position in another case that it is Schultz who is the
true beneficial owner of the judgments.  *Memo. in Opp*., p. 18 (citing to
paragraphs 35 and 38 of a presentence investigation report utilized in
sentencing Mr. Schultz in Case No. 2:01-CR-136 (S.D. Ohio)).

**WHEREUPON**, plaintiff United States of America's *Motion for Judgment Debtor Examination*, Doc. No. 20, is **DENIED**.


April 8, 2014                                          *s/Norah McCann King*
                                                      Norah McCann King
                                            United States Magistrate Judge